[Civil No. 4313. Filed April 21, 1941.]

[112 Pac. (2d) 587.]

JACK T. HOLT, Appellant, v. CRIT BAYLISS, Administrator of the Estate of WILLIAM J. VORDICK, Deceased, Appellee.

194

Mr. George M. Sterling, for Appellant.

Mr. George D. Locke, for Appellee.

McALISTER, J.—This is an appeal by Jack T. Holt from a judgment refusing to establish his claim for $610 against the estate of William J. Vordick, deceased.

The complaint alleges in substance that during the lifetime of the deceased plaintiff furnished him at his request for the agreed price of $35 per month room, board and laundry service from May 1, 1937, to August 26, 1938, and from July 8, 1939, to August 23, 1939, a total period of seventeen months and twelve days; that plaintiff filed with the administrator of the estate, Crit Bayliss, within the time specified in the notice to creditors, his verified claim showing the sum of $610 for this service was justly due; that no payments had been made thereon and that there were no offsets to the same; and that on January 3, 1940, the defendant-administrator denied and refused the claim. The prayer of the complaint, which was filed within the proper time after the claim was rejected, was that the amount and validity of the indebtedness be established by judgment as a valid claim against the estate and ordered paid in due course of administration.

The answer, after admitting defendant was administrator of the estate and had given notice to creditors, denied every other allegation of the complaint.

The facts are few and, with one principal exception, without dispute. The deceased lived at the home of plaintiff at 503 North Rowan Avenue, Los Angeles, California, from May 1, 1937, to August 26, 1938, when

he came to Phoenix, Arizona, and secured board and lodging with the defendant-administrator, Crit Bayliss, and remained there until July 7, 1939. Upon that date he returned to Los Angeles and again took up his residence with the plaintiff, but after six weeks, or about August 23, he returned to Phoenix and to the residence of Crit Bayliss where he died within a day or so after his arrival. He had no relatives in this part of the country, so Mr. Bayliss was appointed administrator, and among the claims filed with him as such was that of the plaintiff for $610 for board, lodging and laundry for the seventeen months and twelve days set forth in the complaint. His investigation of the claim led him to the conclusion that it should be disapproved.

The facts upon which plaintiff asks for a reversal of the judgment of the trial court refusing to order the claim paid are substantially as stated below. It is admitted by all parties that the deceased lived with the plaintiff during the time alleged and that he was to pay $35 a month. The only question in dispute is whether this amount has been paid, or, at least, whether the testimony on that question was such that the rendition of judgment in favor of the defendant was error. The plaintiff testified in his deposition that he first met deceased in a park in Los Angeles two or three weeks before he went to plaintiff's home to live and that nothing was said concerning the amount he would be expected to pay for his board and lodging until he had been at plaintiff's home about a week when they discussed the matter and agreed on $35 a month; that deceased had a small checking account in a bank near plaintiff's home and when they agreed on the amount he should pay, he showed plaintiff his passbook containing a balance of $4,000 and said, ''Now, I am getting interest on this money from the Bank of America; if I draw it out I lose my in-

terest. Would it be all right to let this thing run along?"; that plaintiff replied, "It would," his reason for this answer being that he did not need the money and he knew Vordick was honest; that when Vordick started for Arizona on August 26, 1938, upon the advice of his doctor, he asked plaintiff if he wanted a settlement or would he wait until he (Vordick) came back, to which plaintiff replied, "It is all right, I am not pressed for money exactly"; that upon his return to plaintiff's home on July 8, 1939, after an absence of over ten months, nothing was said to him about paying the amount due, nor was the matter mentioned during the six weeks he was there or upon his leaving for Phoenix on August 23; that he never paid a cent for the seventeen months and twelve days board and room.

The witness, E. B. Green, of Long Beach, California, who knew both plaintiff and deceased, testified that on October 21, 1937, and upon other occasions, the deceased stated to him in the presence of the plaintiff at his home that he was living there with the understanding that "the sum of $35.00 was accruing in favor of claimant each and every month for room, board and laundry furnished by claimant to decedent; that it had been agreed between decedent and claimant that although decedent had the necessary money in a savings account it might stay in the bank to draw interest, since claimant was not then in urgent need of ready cash, and that such accumulating debt would be paid by decedent to claimant at such future time as their relationship might be terminated; that to affiant's knowledge no part of said remuneration for 17 months and 12 days, or $610.00 has been received by claimant, and the same is entirely due and payable by decedent's estate to claimant."

It appeared from the testimony of the defendant-administrator that deceased lived at his home in Phoe-

nix from August 26, 1938, until July 8, 1939, when he left for California and that he returned there only a day or two before his death on August 24 or 25, 1939; that during the period of over ten months he lived with defendant he paid $8 per week for board and room and made his payments promptly each month, often a day or two ahead of time, frequently remarking as he did so, "that he didn't owe anybody and never expected to." He had some money in a Phoenix bank but always paid in cash. He also had at the time of his death a checking account of $500 in a bank near plaintiff's home in Los Angeles, a savings account of $4,000 in a downtown bank there and one of about $5,000 in a San Francisco bank. Defendant or his wife received three letters from plaintiff following Vordick's death dated, respectively, August 26 and 29, and September 8, each concerning the deceased, his relatives or his estate but in none of them was it even suggested that plaintiff had not been paid for the board and lodging furnished deceased.

There was no written evidence of any character as to the terms of the contract or the payments made under it, hence, the court had no alternative other than to decide whether the statements of the plaintiff and the witness, Green, that the claim had not been paid or that of the deceased that it had been should prevail, and in determining this it naturally looked to all the evidence in the case that might have any bearing on this question. The fact that the deceased lived at plaintiff's home for more than fifteen months, that at the end of this period he came to Phoenix on his doctor's advice, that after being in Phoenix for ten months he returned to plaintiff's home in Los Angeles, spent six weeks and again left for Phoenix, without paying any part of the monthly board bills that became due during these seventeen months, more than likely appealed to the court as so improbable that it

accepted the statement of the deceased that "he didn't owe anybody and never expected to," which, of course, included the plaintiff as well as everyone else. It is likely that the reason assigned for permitting the amount due plaintiff to accumulate, namely, that the deceased wished to have that portion of his money in a savings account continue to draw interest, failed to carry much weight with the court, especially so in view of the fact that the interest on $420, his total board bill for a year, would have earned for him only $6.30, $8.40 or $10.50, the exact amount depending upon the rate, whether 1½%, 2% or 2½% per annum. This view was perhaps strengthened in the mind of the court by the fact that while in Phoenix the deceased paid his board and room promptly, sometimes a day or two ahead of time, and by the further fact that in addition to his interest-bearing savings he had a checking account of several hundred dollars.

We are unable to find anything in the record showing that the court reached a conclusion not supported by the evidence. The rule relative to positive and negative testimony, to which plaintiff appeals, has no application to the facts of the case.

The judgment is affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.